IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONALD COTRELL, et al.,       : | |
| :                              | |
| Plaintiff,                     : | |
| :                              | |
| vs.                            : | CIVIL ACTION 16-503-CG-N |
| :                              | |
| CHICKASAW CITY SCHOOLS         : | |
| BOARD OF EDUCATION, *et al.*,  : | |
| :                              | |
| Defendants.                    | |

**REPORT AND RECOMMENDATION**

Currently before this Court is Defendant, Chickasaw City Schools Board of Education's, ("the Board" or "Defendant") Motion to Dismiss (Doc. 7) and Defendant, Kathy Odom's ("Odom") Motion to Dismiss (Doc. 8) pursuant to Federal Rule of Civil Procedure 12(b)(6) which were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Plaintiffs have filed responses to both motions (Docs. 12, 13) to which Defendants, separately, have replied (Doc. 14, 16).  For purposes of judicial economy, these motions will be addressed jointly herein. After careful consideration of the record, it is recommended that both the Board's Motion to Dismiss (Doc. 7) and Odom's Motion to Dismiss (Doc. 8) be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, Ronald Cottrell, James Rigdon, and Stacey Rigdon ("Cottrell", "Rigdon", "S. Rigdon", or collectively "Plaintiffs") filed this action

against Defendants, the Board and Odom, in her individual and official capacity as Superintendent of Chickasaw City Schools, on September 29, 2016, alleging three causes of action pursuant to Ala. Code § 36-26A-3, the State Employees Protection Act, 42 U.S.C. § 1983, and 42 U.S.C § 1985, respectively. (Doc. 1). According to the Complaint, Plaintiffs were each hired by the Board prior to the start of the 2014-15 school year. (*Id*. at 2). Cottrell was hired as a teacher and to serve as head coach of the varsity football team; Rigdon was hired as a teacher and to serve as the head coach for the varsity baseball team; and S. Rigdon was hired as a paraprofessional. (*Id*.) Rigdon and S. Rigdon are husband and wife and their son, Chandler Rigdon ("Chandler"), was also a student at Chickasaw School during the 2014-15 school year and is at the center of the incident which resulted in this litigation. (*Id*.)

According to Plaintiffs, on or about September 21, 2014, Chandler was hit in the head by Principal Brent Ward ("Ward") while standing in the hallway talking with his teacher, Stephanie Serra. (*Id*. at 3). Ward allegedly struck Chandler a total of three times, with the third strike hitting Chandler's face. (*Id*.) Ricky Ruffin ("Ruffin"), the school's athletic director, and Cottrell both witnessed the incident. Approximately fifteen minutes later Chandler reported the incident to Ivey Williams ("Williams"), a teacher, and Williams, in turn, confronted Ruffin. (*Id*.) Ruffin, in turn, took Chandler outside of the school and instructed him not to tell his father,

Rigdon, about the incident. Ruffin then informed Rigdon of the incident himself indicating that he had taken care of the situation. (*Id*.)

Later the same day, Serra met with the Rigdons, informed them of the incident, and apologized that it had occurred. (*Id*.) After school was dismissed, the assistant principal, Willie Lewis ("Lewis") approached Cottrell and told him that he should calm Rigdon down and that the Rigdons did not need to press charges, to which Cottrell replied that Ward should not have hit a student. At football practice the same afternoon, Lewis approached Rigdon and stated "[w]ord for the wise, if you want to stay, you need to let it go." (*Id*. at 4). The day after the incident, Cottrell approached Ward and suggested that Ward apologize, to which Ward refused. (*Id*.)

A few days after the incident occurred, Rigdon requested the video surveillance of the incident and Rigdon, Ward, and Ruffin watched the video in Ward's office. (*Id*.) Both Rigdon and Cottrell reported the incident to Robert McFall, president of the Board. (*Id*.) Rigdon also notified the superintendent at the time, Kyle Kallhoff ("Kalloff") and received a response that Rigdon should follow the chain of command by reporting the incident to Ward. (*Id*.). Kalloff then contacted Cottrell to confirm the veracity of the incident and was informed that it had, in fact, occurred to which Kalloff replied that Ward was doing a good job and that he (Kalloff) was not going to investigate the incident with Chandler. (*Id*.) In turn, S. Rigdon reported the incident to the state superintendent and a week later Kalloff requested a

meeting with the Rigdons. Present at the meeting were the Rigdons, Kalloff, and the attorneys for the Board and the Chickasaw School System, Bob and Nash Campbell. (*Id.*)

Following the meeting, no investigation of the incident was initiated and Ward was not disciplined. (*Id.* at 5). However, weeks after the incident, Ward was accused of sexual harassment by a female employee and later resigned. (*Id.*) Lewis became interim principle until the end of the 2014-15 school year. (*Id.*) On November 3, 2014, the Rigdons and Chandler filed a complaint against Ward with the Chickasaw Police Department. Ward was charged with harassment and prosecuted in Chickasaw Municipal Court. The Rigdons and Cottrell participated in the municipal trial and the trial in the Circuit Court of Mobile, Alabama.[1] (*Id.*)

According to Plaintiffs, following the incident they were harassed, treated disparately, and received random and unnecessary classroom visits by Lewis and Ward and were disciplined for minor events. (*Id.*) Rigdon reported the harassment to Kalloff and was again told to go through the proper chain of command. (*Id.*) According to Plaintiffs, their negative treatment escalated following the instigation of charges with the police department and Chandler was additionally harassed. (*Id.* at 5-6). In December 2014, S. Rigdon sent an email to Lewis requesting that the harassment end, but according to Plaintiffs, it continued throughout the school year. On May 6, 2015, the Rigdons were told by Kalloff that they were

---

[1] Plaintiffs do not state the basis of the circuit court trial.

4

being placed on administrative leave without being given a reason. (*Id*. at 6). On June 11, 2015, Kalloff recommended to the Board that each of the Plaintiffs be terminated in the form of a non-renewal of their contract and the Board approved the terminations. (*Id*.) The instant litigation followed.

On December 5, 2016, Defendant, the Board, filed a Motion to Dismiss Count Three of Plaintiffs' Complaint "under Rule 12(B)(6) insofar as [Plaintiffs'] claims fail to meet the legal standard of preventing a witness from testifying in a Federal Court pursuant to 42 U.S.C. § 1985(2)". (Doc. 7 at 5). The same day, Odom filed a Motion to Dismiss this action against her both in her individual and official capacities. (Doc. 8). On December 27, 2016, Plaintiffs filed responses to both motions urging that dismissal was not warranted. (Docs. 12, 13). Defendants replied separately on December 29, 2016 and January 3, 2017, respectively. (Docs. 14, 16).

**Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (*citing Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). " 'To survive ... a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Id*. (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Id.* (*quoting Twombly*, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

## DISCUSSION

### A. Count Three: 42 U.S.C § 1985(2) Conspiracy to Injure Witness for Testifying

Defendant, the Board, contends that Count Three of the Complaint should be dismissed because Plaintiffs "have not and cannot allege that there was a conspiracy to prevent any of them from attending or testifying in Federal Court." (Doc. 7 at 5). Plaintiffs assert that 42 U.S.C § 1985(2) does not require such a showing and further urge that "[d]efendants conspired to injure them for cooperating, participating, and being willing to testify in any legal action brought against a school principal hired by Defendants" (Doc. 12 at 2), which they contend is sufficient to sustain their claim under § 1985(2). This Court interprets Plaintiffs' argument as twofold: first, a federal action is

6

not required for section 1985(2) to apply; and, second, if a federal action is required, dismissal is not warranted because the proceeding need not be pending. The parties agree that § 1985(2) case law on conspiracies to obstruct justice is sparse. (Docs 7 at 7; Doc. 12 at 3.)

> 42 U.S.C § 1985(2) states in pertinent part as follows:
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified […]

42 U.S.C § 1985(2). "Thus, this portion of section 1985(2) prohibits two (2) types of conspiracies to obstruct justice in a federal court: those for the purpose of deterring attendance or testimony in court; and those for the purpose of retaliating against a witness for attending or testifying in court. For either, the Plaintiffs must prove a violation of a right actually to attend or testify in a federal court." *Massengale v. Hill*, 2006 WL 83429 *6 (N.D. GA January 10, 2006) *citing to Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 347-48 (5th Cir. 1981) (en banc). The elements of a claim under 1952(2): "(1) a conspiracy between two or more persons; (2) to deter a party or witness by force, intimidation, or threat from attending *federal court or testifying freely in a pending matter*; which (3) causes injury to the plaintiff." *Massengale*, 2006 WL at *6 (emphasis added) *citing to Wagner v. Daewoo Heavy Indus. Am. Corp.*, 289 F.3d 1268, 1271 (11th Cir. 2002), vacated on other grounds, 314 F.3d 541 (11th Cir. 2002); *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23

7

(2d Cir. 1984). Under part two (2), rather than establishing deterrence from testifying or attending, the plaintiff must show that a party or witness was injured as a result of attending or testifying in court. *Id*.

With regard to Count Three, Plaintiffs' Complaint states as follows:

50. Plaintiffs were told by Defendants not to report the assault of a minor child by their school principal. It was represented to the Plaintiffs that their employment would be affected for their reporting of the assault and their participation in the investigation and prosecution of the crime against a minor child.

51. Upon reporting and participating in the investigation and prosecution of the assault, Plaintiffs were harassed and discriminated against in their employment by Defendants up to, and including, their eventual terminations.

52. Defendants' harassment, discrimination, and termination of Plaintiffs is a violation of the Plaintiffs' civil rights, pursuant to 42 U.S.C. § 1985(2).

In addition to the above, the Complaint indicates that Plaintiffs participated in Municipal and Circuit Court proceedings. (Doc. 1 at 5). No mention is made of any interference with a pending matter in federal court.

In support of their argument that a federal action is not required, Plaintiffs argue that *Kimble, supra*[2] and *Morast v. Lance, 807 F.2d 926, 930 (1987)*[3], the cases on which Defendant rely, are distinguishable from the

---

[2] In *Kimble*, the Plaintiffs alleged they were retaliated against for previously filing personal injury suits or workmen's compensation claims against their employer. The Court found that "[s]ection 1985(2) was not designed as a vehicle to remedy such allegedly tortious acts of employers against employees pursuing workmen's compensation or personal injury claims. Rather, it was intended to protect against direct violations of a party or witness's right to attend or testify in federal court." *Kimble, supra* at 348.

[3] In *Morast*, the Plaintiff alleged that the defendants tried to deter him from testifying at a hearing before the Office of the Comptroller of the Currency (OCC). *Morast* argued that "because such testimony was 'in a matter pending in federal court pursuant to continuing Judgment and Orders of the United States District Court for the Northern District of

8

instant action because this action does not involve the Office of the Comptroller of the Currency like in *Morast* or personal injury/workman's compensation claims like in *Kimble*. Plaintiffs are correct that those cases are factually distinguishable from the case at hand. However, it is also clear that the reason § 1985(2) did not apply in those cases was not only because of what was involved, but what was *not* involved, i.e., a federal court proceeding. *Kimble,* supra at 348 *("[I]t [§ 1985(2)] was intended to protect against direct violations of a party or witness's right to attend or testify in federal court."); see also, Burrell v. Infirmary West*, 2010 WL 749332 *5 (S.D. Ala. March 1, 2010)("Plaintiff has not alleged that Defendant conspired against her in connection with a federal legal proceeding. Thus, she has failed to make out a claim under § 1985(2).") Plaintiffs' assertion that § 1985(2) does not require the existence of a federal proceeding is without merit.

Plaintiffs have alternatively attempted to overcome dismissal by linking their § 1985(2) to a future federal action by arguing "[t]he assault of the student created any number of unknown legal proceedings. Plaintiffs were warned not to participate in or pursue any legal actions. Plaintiffs were ultimately terminated in an attempt to prevent them from participating in or pursuing legal action." (Doc. 8 at 1). In support of this assertion, Plaintiffs additionally state as follows:

---

Georgia,' the conspiracy related to testimony before 'any court of the United States.'" The Eleventh Circuit, relying on *Kimble*, disagreed and stated "[s]ection 1985(2) applies only if the conspiracy attempted to prevent the witness from attending or testifying in federal court. Morast's testimony was before the OCC, an administrative agency, not a federal court." *Id*. (citation omitted).

Case 1:16-cv-00503-CG-N   Document 19   Filed 01/23/17   Page 10 of 17


> The assault on a student, for which Plaintiffs were witnesses, is a violation of that student's federal civil rights. The student has the right to pursue those claims against him, and the venue for those claims is a federal district court. Defendants conspired to injure Plaintiffs for cooperating, participating, and **being willing to testify in such a proceeding before a federal district court** …"
>
> […]
>
> As noted above, the student suffered violations of his federal civil rights, for which a federal district court would be the proper venue. For this violation of federal civil rights **and any federal litigation to follow**, Defendants conspired to injure Plaintiffs to prevent them from testifying.

(Doc. 12 at 2-3)(emphasis added).[4] Plaintiffs have not cited any legal authority to support their argument and this Court is aware of none. Nevertheless, such a contention would not be consistent with the analysis stated herein above or the direct language of section 1985(2)( " […] from attending such court, or from testifying to any matter *pending* therein…")(emphasis added); s*ee also Massengale, supra* (dismissing Plaintiff's claim because section 1985(2) requires that a witness be deterred from testifying in a *pending* federal proceeding,[and] any actions that occurred before [or after the federal court case] was pending, cannot support the Plaintiffs' claim) *citing to Northrup v. Conseco Fin. Corp.*, 141 F.Supp.2d 1372, 1375-76 (M.D. Ga. 2001) (section 1985(2) claim dismissed because no federal proceeding was pending when alleged efforts to deter plaintiff from testifying occurred); *Rochon v. Dillon*, 713 F.Supp. 1167, 1174 (N.D. Ill. 1989) (plaintiff failed to state section 1985(2) claim because all complained-of

---

[4] Of note, this information is not asserted in the Complaint.

incidents occurred before federal action was instituted). In the present action, it is evident that the actions complained of by Plaintiffs occurred when no federal court case was pending. As a result, Plaintiffs' have not stated a plausible claim under § 1985(2) and it is recommended that Defendant's Motion to Dismiss Count Three (Doc. 7) be granted.

### B. Defendant Kathy Odom

Defendant Odom asserts that this action is due to be dismissed against her in both her individual and official capacities because Plaintiffs have failed to state any facts that would sustain personal liability on her part and because an action against Odom in her official capacity is, in reality, an action against the Board. (Docs. 8, 16, generally). Plaintiffs contend that dismissal is not warranted because "the current Superintendent is liable for the actions of the Office of Superintendent" and because it was the joint effort of the superintendent and the Board that resulted in the termination of Plaintiffs. (Doc. 13 at 2).

As an initial matter, in their response Plaintiffs assert, "[p]laintiffs have sued Defendant Odom in her Official Capacity." (Doc. 13 at 1). Further, despite the arguments made by Odom in her motion seeking dismissal, Plaintiffs have not rebutted the dismissal of any alleged claim against Odom, individually. This Court understands Plaintiffs' silence and clarifying statement in their response to mean that Odom is not being sued in her individual capacity. Nevertheless, even if Plaintiffs did not intend to concede

11

dismissal against Odom, individually, the undersigned finds that dismissal is still warranted.

To properly state a claim against Odom individually, Plaintiffs would need "to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In the present action, it is undisputed that "the events underlying Plaintiffs' claims occur[ed] during the administration of a previous superintendent." (Doc. 13 at 1). The only argument provided by Plaintiffs to potentially rebut this detrimental fact is stated as follows: "Even though Odom was not Superintendent when Plaintiffs had their rights violated, the current Superintendent is liable for the actions of the Office of Superintendent." (Doc. 13 at 2). It appears that Plaintiffs are attempting to impose individual liability on Odom for the individual and/or official actions of the former superintendent solely because she holds an official position. The law does not permit such an avenue for liability. Because there are no facts in the Complaint that would plausibly sustain a claim against Odom in her individual capacity, it is recommended that this action be dismissed against Odom in that regard.

With regard to Odom's Motion to dismiss this action in her official capacity, Plaintiffs assert that they have properly named Odom using her name, rather than just her title in accordance with Fed. R. Civ. Pro. 17(d). (Doc. 13 at 1-2). However, while it may be proper to identify a party by

12

name, rather than by title, such a rule does not address the issue at hand, i.e., whether dismissal of a superintendent in her official capacity is warranted when the respective Board of Education is also a named party. Plaintiffs additionally assert that dismissal is not proper in this action because the "actions to terminate Plaintiffs could not have been completed but for the joint actions of each the Defendant Board of Education and the Defendant Superintendent" and because "[r]esolution of Plaintiffs' claims necessitates Defendant Odom's participation as a named Defendant in this action." (Doc. 13 at 3). Plaintiffs have not cited any case authority that would prevent the Court from enforcing a judgment or entering injunctive relief against the Board if Superintendent Odom were not a party to this action. Lastly, Plaintiffs argue that Odom should not be dismissed because "[d]efendant Odom is not named as an agent of the Defendant Board of Education. She is named in her capacity as Superintendent, a separate and distinct entity with its own statutory authority and obligations." (Doc. 13 at 4).

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court recognized that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent[.]" *Id.* at 690 n. 55, 98 S.Ct. at 2035 n. 55. Later, the Supreme Court in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) stated that

13

"[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166, 105 S.Ct. at 3105 (emphasis supplied; citation omitted). "It is not a suit against the official personally, for the real party in interest is the entity." *Id*. (emphasis in original). The Court went on to note, however, that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (citation omitted).  The Eleventh Circuit has since addressed official capacity claims in suits where a municipal entity has also been named and held that "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly ... To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." *Busby v. City of Orlando*, 931 F.2d 764,776 (11th Cir. 1991).

Based upon the above, the Middle District of Alabama treated an IDEA suit against the superintendents of the Montgomery County Board of Education and the Alabama Department of Education in their official capacities as claims against the Montgomery County Board of Education and

the Alabama Department of Education, respectively. *See B.I. v. Montgomery County Board of Education*, 750 F.Supp.2d 1280, 1283 (M.D. Ala. 2010). The Northern Division of this Court has additionally relied upon such a rationale to dismiss a superintendent in his official capacity when the respective board of education was the real party in interest. *See N.B. ex rel. L.K. v. Griffin*, 2012 WL 692963 *2 (S.D. Ala. March 1, 2012). This Court has additionally relied on *Busby* to dismiss official capacity suits against a superintendent when the Board of Education was named. *See Betts v. Conecuh County Bd. of Educ.*, 2014 WL 7411670 *7 (S.D. Ala. December 10, 2014) (dismissing § 1983 claims against superintendents in their official capacities as redundant when the Board was a named Defendant.); *see also Shaw v. Mobile County Public School System*, 2014 WL 2452894 *2 (S.D. Ala. June 2, 2014).

Plaintiffs have offered no legal support for the notion that a superintendent is a separate and distinct entity from the Board as they allege. Instead, they have distinguished this action from *MR v. Board of School Commissioners of Mobile County*[5], relied on by Odom in her motion, because that case did not involve a superintendent. Plaintiffs' factual distinctions may be accurate, however, as noted above, dismissal has also been warranted in cases like Plaintiffs', when a superintendent is named as a defendant in his/her official capacity and the Board is also a named party.

---

[5] The issue addressed by *MR v. Board*, was whether it was necessary to state an official capacity claim when the entity represented by that official was also named. Relying on *Busby*, 931 F.2d at 776, this Court first determined that the named Defendants sued in their official capacities were representative of the Board and therefore naming those officials was redundant. *MR v. Board*, *supra* at *3.

15

Moreover, Plaintiffs' assertion that they have not named Odom as an agent of the Board does not refute that she is, in fact, an agent of the Board when she is named in her official capacity.  Based on the above, it is evident that an action against Odom in her official capacity is, in reality, and action against the Board.  As a result, it would be redundant to have both Odom and the Board as party Defendants.  Therefore, the undersigned recommends that Odom's Motion to Dismiss (Doc. 8) be granted.

## CONCLUSION

For the reasons set forth herein above, it is recommended that both the Board's Motion to Dismiss Count Three (Doc. 7) and Odom's Motion to Dismiss (Doc. 8) be granted.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party

was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 23rd day of January, 2017.

                                          */s/ Katherine P. Nelson*
                                          **KATHERINE P. NELSON**
                                          **UNITED STATES MAGISTRATE JUDGE**